712 A.2d 180

MT. HOPE DEVELOPMENT ASSOCIATES, EAJ, INC., AND HUN-
DAL CORPORATION, PLAINTIFFS–APPELLANTS, v. MT.
HOPE WATERPOWER PROJECT, L.P., MT. HOPE MINING
COMPANY, INC., HALECREST COMPANY, MT. HOPE HYDRO
INC., MT. HOPE PROPERTIES, INC., KVAERNER HYDRO
POWER, INC. AND PAUL RODZIANKO, DEFENDANTS–RE-
SPONDENTS, AND ATTORNEY GENERAL OF NEW JERSEY,
INTERVENOR–RESPONDENT, AND ABB GENERATION, INC.
AND JOHN DOE CORP., NOS. 1 THROUGH 10, DEFENDANTS,
AND ANGELO CALI, ASHFAQ AHMAD AND IQBAL AHMAD,
ADDITIONAL DEFENDANTS ON THE COUNTERCLAIM.

Argued February 2, 1998—Decided June 2, 1998.

142

*Peter R. Bray* argued the cause for appellants (*Bray, Choicca, Rappaport & Rothstadt,* attorneys).

*Dean A. Gaver* argued the cause for respondents (*Hannoch Weisman,* attorneys).

*Robert H. Stoloff,* Assistant Attorney General, argued the cause for intervenor-respondent (*Peter Verniero,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

GARIBALDI, J.

At issue in this case is whether the Alternative Procedure for Dispute Resolution Act (the "APDRA"), *N.J.S.A.* 2A:23A–1 to—19, infringes on an individual's constitutional right to appeal and on this Court's constitutional rulemaking authority. The issue arises in the context of an umpire's award in a complex real estate contract dispute. The Chancery Division confirmed that award. The Appellate Division dismissed plaintiffs' appeal, as barred by the APDRA. We granted certification, 151 *N.J.* 71, 697 *A.*2d 544 (1997), and now affirm the Appellate Division.

I

The subject matter of the dispute concerns a 1280 acre tract of land in Rockaway Township, Morris County, owned by the Mount Hope Mining Company (MHMC). In October 1985, the parties to this action, through a number of different entities, entered into a joint venture agreement to develop simultaneously two separate projects on the site: a hydroelectric project and a residential project. The contract for the residential project required MHMC to convey title to the site to a joint venture entity that was to be formed, which entity became the Mt. Hope Development Associates (MHDA). Both projects required many approvals from various federal, state, and local agencies. The approval process took place between October 1985 and October 1994.

Shortly after embarking on the joint venture, the parties had a major falling-out. Throughout their attempts to complete both projects, the parties spent a great deal of time and money litigating various disputes. In connection with one of those disputes, on February 27, 1989, the parties entered into a settlement agreement, which was embodied in a consent judgment. Paragraph 13 of that consent judgment stated:

> The parties agree to submit any dispute as to the rights and obligations of the respective parties for resolution under the New Jersey Alternative Dispute Resolution Act, 2A–23A–1 *et seq.* The parties agree that the umpire shall be entitled to award damages and/or reasonable attorney's fees to the prevailing party in such proceeding.

Following that settlement, the relationship between the parties did not improve. On November 12, 1990, the parties executed another agreement that they hoped would be a comprehensive settlement. Nevertheless, the relationship between the parties continued to deteriorate. On December 3, 1992, MHDA filed suit in the Chancery Division, Morris County, against several of the parties involved in both projects. Defendants moved to compel alternative dispute resolution based on the February 27, 1989 consent judgment. On June 17, 1993, the court entered a consent order staying the action and compelling APDRA proceedings. Subsequently, by mutual agreement, the parties chose Harvey Smith, a retired Superior Court Judge, to be the umpire. In that proceeding, the parties made cross-allegations of breach of contract, conspiracy, tortious interference with contract, and fraud. Both sides also sought accountings.

The APDRA proceedings began in April 1994. The proceedings consisted of twenty days of testimonial hearings, including the testimony of twenty-one individuals and over 330 exhibits. Over the course of the APDRA proceedings, Umpire Smith made several interim and final written awards and orders. The umpire rendered a written award for defendants dated November 21, 1994. That award was modified on January 17, 1996. In addition, on April 24, 1996, the umpire directed the execution of a limited partnership agreement. On July 3, 1996, the umpire entered a

"Summary of Disposition of Claims," which tracked the award to the various corresponding claims in the pleadings. In his award, the umpire made findings of facts and conclusions of law.

On June 6, 1996, MHDA filed a motion in the Superior Court, Chancery Division, to vacate or modify the award. Defendants moved to confirm the award. On October 17, 1996, the Chancery Division confirmed the award. MHDA filed an appeal with the Appellate Division. Defendants moved to dismiss the appeal on the grounds that under the APDRA, plaintiffs waived their right to appeal. On January 27, 1997, the Appellate Division granted defendants' motion to dismiss.

## II

### A.

The Alternative Procedure for Dispute Resolution Act was enacted in 1987 to:

create a new procedure for dispute resolution which would be an alternative to the present civil justice system and arbitration system of settling disputes. It is intended to provide a speedier and less expensive process for resolution of disputes than traditional civil litigation and would provide parties with rights that are not currently available under New Jersey's Arbitration Act.

[*Governor's Reconsideration and Recommendation Statement to Assembly Bill No. 296*, at 1 (Jan. 7, 1987), *reprinted at N.J.S.A.* 2A:23A-1.]

*See also Draftsman's Legislative History, reprinted at N.J.S.A.* 2A:23A-1 ("It is hoped that through the enactment of the NJADR Act those parties that want a formal method of resolving disputes with predictable rules, procedures, and results but without the costs and delays associated with traditional litigation can be accommodated.").

The APDRA is a voluntary procedure for alternative dispute resolution that is only operative when parties to a contract agree to be governed by it. *N.J.S.A.* 2A:23A-2; *see also* John v. O'Hara, *The New Jersey Alternative Procedure for Dispute Resolution Act: Vanguard of a "Better Way?", 136 U. Pa. L.Rev.* 1723, 1752 n. 176 (1988) (stating APDRA "is entirely voluntary and must

be designated by the parties as the source of rules governing dispute resolution"). For parties to be bound by the APDRA, it is "sufficient that [they] signify their intention to resolve their dispute by reference in the agreement to 'The New Jersey Alternative Procedure for Dispute Resolution Act.'" *N.J.S.A.* 2A:23A–2(a). The APDRA may be invoked to settle any controversy arising out of a contract, and parties to an existing controversy may agree to have their controversy resolved under the APDRA. *Ibid.*

Parties to an APDRA proceeding are entitled to discovery. *N.J.S.A.* 2A:23A–10. The dispute is heard by an umpire, *N.J.S.A.* 2A:23A–9, who is required to make an "award on all issues submitted for alternative resolution in accordance with applicable principles of substantive law." *N.J.S.A.* 2A:23A–12(e). That award must be acknowledged and in writing, and must "state findings of all relevant material facts, and make all applicable determinations of law." *N.J.S.A.* 2A:23A–12(a). Within twenty days after delivery of the award, the umpire may modify the award for certain enumerated errors. *N.J.S.A.* 2A:23A–12(d).

After the award is delivered by the umpire, the parties have forty-five days (thirty days if the award is modified) to commence a summary action in the Chancery Division of the Superior Court to vacate, correct, or modify the award. *N.J.S.A.* 2A:23A–13(a). The APDRA further provides that once a court grants an order confirming, modifying, or correcting an award, "a judgment or decree shall be entered by the court in conformity therewith and be enforced as any other judgment or decree. *There shall be no further review of the judgment or decree.*" *N.J.S.A.* 2A:23A–18(b) (emphasis added).

Pursuant to *N.J.S.A.* 2A:23A–18(b), the Appellate Division dismissed plaintiffs' appeal from the Chancery Division's confirmation of the umpire's award. Plaintiffs assert that the APDRA violates their constitutional right to appeal and intrudes on this Court's constitutional rulemaking authority. We discuss each assertion in turn.

### B.

Article VI, Section 5, paragraph 2 of the New Jersey Constitution guarantees the right to appeal from a final decision of the Law and Chancery Divisions of the Superior Court and in such other cases as may be provided by law. Additionally, that right to appellate review is "secured against legislative interference by Article VI, Section II, paragraph 2, Section III, paragraph 3, Section V, paragraphs 1, 2, and Article XI, Section IV, paragraph 3 [of the New Jersey Constitution]." *Hager v. Weber*, 7 *N.J.* 201, 205, 81 *A.*2d 155 (1951).

Although the New Jersey Constitution grants parties the right to appeal,

> [t]he general rule ... is that a party may, by express agreement or stipulation before trial or judgment, waive his right to appeal, and such agreements or stipulations will be enforced by dismissal of the appeal taken out of violation thereof, or by refusing to pass upon questions covered by the waiver. The intention and agreement to waive the right of appeal must be clear, and there must be sufficient consideration. Such agreements are upheld upon the grounds of public policy in encouraging litigants to accept as final decisions of courts of original jurisdiction.
>
> [*Harmina v. Shay*, 101 *N.J. Eq.* 273, 137 *A.* 558 (E. & A.1927).]

*See also State v. Gibson*, 68 *N.J.* 499, 511, 348 *A.*2d 769 (1975) (stating, in reference to policy of encouraging civil and criminal settlements, that "we do not share the view that there is an affirmative public policy to be served in fostering appeals, whether civil or criminal, such that the waiver of an appeal by defendant is *per se* against public interest"); *cf. New Jersey Mfr. Ins. Co. v. Travelers Ins. Co.*, 198 *N.J.Super.* 9, 12–13, 486 *A.*2d 339 (App.Div. 1984) (holding that waiver of appeal provision in inter-company arbitration agreement is valid and enforceable). That rule is in accord with the general rule permitting waiver of constitutional rights. *See Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L. Ed.*2d 694 (1966) (allowing waiver of privilege against self-incrimination); *Sexton v. Newark Dist. Tel. Co.*, 84 *N.J.L.* 85, 101, 86 *A.* 451 (1913), *aff'd*, 86 *N.J.L.* 701, 91 *A.* 1070 (1914) (allowing waiver of right to trial by jury).

■ The first question, therefore, is whether the APDRA clearly informs parties that by invoking its procedures, parties are waiving their right to appeal. We believe the language of APDRA unmistakably informs parties that by utilizing its procedures they are waiving that right.

Several sections in the statute make express reference to the limitation on appeals. *N.J.S.A.* 2A:23A–2, which instructs parties how to invoke APDRA's procedures, is entitled "Contracts to Submit; enforcement of submission; waiver of right to trial by jury *and appeal.*" (emphasis added). That section specifically states:

> Any contract provision or agreement described in subsection a. of this section shall be construed as an implied consent by the parties to the jurisdiction of the Superior Court to enforce that provision or agreement pursuant to the provisions set forth in this Act and to enter judgment thereon. *The contract provision or agreement shall constitute a waiver by the parties of the right to trial by jury and to appeal or review, except as specifically provided for in this Act.* (emphasis added).

Likewise, *N.J.S.A.* 2A:23A–18(b). provides:

> Upon the granting of an order confirming, modifying or correcting an award, the judgment or decree shall be entered by the court in conformity therewith and be enforced as any other judgment or decree. *There shall be no further appeal or review of the judgment or decree.* (emphasis added).

Similarly, *N.J.S.A.* 2A:23A–5(b). provides that "[a]n appeal from a final award decision by the umpire may be obtained *only* as provided in section 13 of this Act." (emphasis added). Finally, emphasizing the importance of limited review, *N.J.S.A.* 2A:23A–19 provides:

> This Act shall be liberally construed to effectuate its remedial purpose of allowing parties by agreement to have resolution of factual and legal issues in accordance with informal proceedings and *limited judicial review* in an expedited manner. (emphasis added).

*See also Draftsman's Legislative History reprinted at N.J.S.A.* 2A:23A–1 to –19 ("[T]he only appeal of an umpire's award contemplated by the NJADR Act is an expedited summary review to the Chancery Division of the New Jersey Superior Court."). Those provisions make it clear that, in invoking APDRA, individuals are waiving both their right to appeal and their right to trial by jury.

Parties invoking arbitration to settle a dispute also waive some constitutional rights. They waive their right to trial by jury. *See Allgor v. Travelers Ins. Co.,* 280 *N.J.Super.* 254, 263, 654 *A.*2d 1375 (1995). Also, because an arbitration award "may be vacated only for fraud, corruption, or similar wrong doing on the part of the arbitrators," *Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.,* 135 *N.J.* 349, 358, 640 *A.*2d 788 (1994) (quoting *Perini Corp. v. Greate Bay Hotel & Casino, Inc.,* 129 *N.J.* 479, 548, 610 *A.*2d 364 (1992) (Wilentz, C.J., concurring)), parties to arbitration also waive, to some extent, their right to appeal. There is no distinction between arbitration and the APDRA that would prohibit parties who invoke the APDRA from likewise waiving those rights. Indeed, the public policy underlying the APDRA is essentially the same as that underlying the Arbitration Act, *N.J.S.A.* 2A:24–1 to –11: "finality and limited judicial involvement." *Tretina Printing, supra,* 135 *N.J.* at 361, 640 *A.*2d 788.

In this case, the parties are highly sophisticated businessmen who were represented by counsel when they entered into the consent judgment that specifically bound them to use the APDRA's procedures to resolve their disputes. Also, during the extensive APDRA proceedings, no objection was made to proceeding under the APDRA. Plaintiffs' late assertion that they did not make a knowing and intelligent waiver of their right to appeal is not credible.

Although limited judicial review is a central component of the APDRA, the APDRA's procedures are entirely voluntary, and thus, parties are free to invoke its procedure *in toto* or subject to agreed upon modifications. *See Tretina Printing, supra,* 135 *N.J.* at 358, 640 *A.*2d 788 (noting in context of arbitration statute's limited review that parties are free to expand the scope of judicial review by providing for such expansion in their contract). Had the parties to this action desired to preserve their right to appeal, they could have inserted a provision into the consent judgment reserving that right and delineating the scope and extent of any appeal. They did not do so.

## C.

A separate, albeit closely related issue, is whether the Legislature, by its enactment of the APDRA, impinged on the power of this Court to control the practice and procedure of the courts in general and the power to regulate appeals in particular. Article VI, Section 2, paragraph 3 of the New Jersey Constitution provides: "The Supreme Court shall make rules governing the administration of all courts in the state and, subject to the law, the practice and procedure in all such courts." That provision has been broadly defined to vest this Court with the exclusive jurisdiction to administer the courts of this State. *See Winberry v. Salisbury,* 5 *N.J.* 240, 255, 74 *A.*2d 406, *cert. denied,* 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L. Ed.* 638 (1950); *In re Mattera,* 34 *N.J.* 259, 168 *A.*2d 38 (1961).

In *Winberry, supra,* we considered whether a statute providing for an appeal within a year had supremacy over a Court Rule requiring the filing of an appeal within forty-five days. The Court concluded that because Article VI, Section 2, paragraph 3 of the New Jersey Constitution grants this Court the exclusive power to control the courts, subject only to substantive law, the Rule had supremacy. *Winberry, supra,* 5 *N.J.* at 245, 74 *A.*2d 406.

The doctrine of separation of powers is fundamental to our State government. *Communications Workers of Am. v. Florio,* 130 *N.J.* 439, 449, 617 *A.*2d 223 (1992). Article III, paragraph 1 of the New Jersey Constitution specifically prohibits any one branch of government from exercising powers belonging to a coordinate branch. Nevertheless, we have always recognized that provisions of the State Constitution prohibiting one branch of government from infringing on the power of the other "requires not an absolute division of power but a cooperative accommodation among the three branches of government." *Ibid.* (citing *General Assembly v. Byrne,* 90 *N.J.* 376, 382, 448 *A.*2d 438 (1982); *Knight v. Margate,* 86 *N.J.* 374, 388, 431 *A.*2d 833 (1981); *Brown v. Heymann,* 62 *N.J.* 1, 11, 297 *A.*2d 572 (1972)). Also, it is well-settled that "a legislative enactment will not be declared void

unless its repugnancy to the Constitution is so manifest as to leave no room for reasonable doubt." *Smith v. Penta,* 81 *N.J.* 65, 75, 405 *A.*2d 350 (1979).

■ Relevant to this case is *Rule* 2:2–3(a)(1), which grants the right to appeal to the Appellate Division from a final judgment of the Chancery or Law Division. Plaintiffs assert that the Legislature, through the enactment of the APDRA, has attempted to circumscribe that Rule, in violation of *Winberry* and this Court's constitutional authority. We do not find that the APDRA infringes on this Court's authority.

*Rule* 2:2–3(a)(1) merely implements the constitutional right to appeal. Just as the constitutional right to appeal may be waived, so may the right granted by *R.* 2:2–3(a)(1). Additionally, the APDRA, unlike most statutes, is not self-executing. It is a voluntary procedure that only applies if it is invoked in a written agreement. It imposes no restrictions on the Court or any party. Also, because there are so many other avenues to resolve disputes, a party that does not choose the APDRA suffers no adverse consequences. In essence, through the enactment of the APDRA, the Legislature has created a blueprint for those parties who want their dispute settled by APDRA so that they do not have to negotiate a complete set of dispute resolution procedures. Because the Legislature has simply created a voluntary system of dispute resolution procedures, the Legislature has not attempted to override any Court Rule promulgated by this Court, has not intruded on this Court's authority, and has not violated the doctrine of separation of powers.

We have often stressed this State's strong public policy favoring arbitration as well as other alternative dispute mechanisms. *See Faherty v. Faherty,* 97 *N.J.* 99, 105, 477 *A.*2d 1257 (1984) ("In this state, as in most American jurisdictions, arbitration is a favored remedy."); *Barcon Assocs., Inc. v. Tri–County Asphalt Co.,* 86 *N.J.* 179, 186, 430 *A.*2d 214 (1981) (stating that arbitration is favored by the courts in this state). In so doing, we have recognized the "needs of a modern society to develop desirable

alternatives to litigation. Our guiding principles should strengthen the systems that encourage those alternatives to litigation, not weaken them." *Perini Corp., supra,* 129 *N.J.* at 489, 610 *A.*2d 364. Prohibiting the Legislature from creating a voluntary system of alternative dispute resolution would be contrary to those principles.

### D.

Appellants have not alleged any of those "rare circumstances" grounded in public policy that might compel this Court to grant limited appellate review. *Tretina Printing, supra,* 135 *N.J.* at 364–65, 640 *A.*2d 788. For example, in *Faherty, supra,* 97 *N.J.* at 109, 477 *A.*2d 1257, we addressed the enforceability of an award affecting child support. We held that an award that adversely affects the substantial best interest of the child must be subject to review beyond the statutory grounds for vacation or modification provided in *N.J.S.A.* 2A:24–8. In reaching that conclusion, we "recognize[d] that courts have a nondelegable, special supervisory function in the area of child support that may be exercised upon review of an arbitrator's award." 97 *N.J.* at 109, 477 *A.*2d 1257. As with arbitration, when parties proceed under the APDRA, there may be other limited circumstances where public policy would require appellate court review. For instance, because of this Court's supervisory function over the courts, we may determine that an award that is confirmed, modified, or vacated by a biased court should be subject to review beyond that which is provided for in *N.J.S.A.* 2A:23A–18. Such issues, however, are not present in this case.

### E.

The parties knowingly agreed to resolve their disputes under the APDRA, which provides for a limited right of appeal. The APDRA does not infringe on the parties' constitutional right to appeal or this Court's constitutional rulemaking authority. The

Appellate Division properly dismissed plaintiffs' appeal. The judgment of the Appellate Division is affirmed.

STEIN, J., concurring in part and dissenting in part.

This appeal presents a constitutional issue of substantial magnitude. The question posed concerns the constitutionality of provisions of the Alternate Procedure for Dispute Resolution Act (the Act or APDRA), *N.J.S.A.* 2A:23A–1 to –19, that purport to eliminate all judicial review of any order of the Chancery Division confirming, modifying or correcting an umpire's award issued pursuant to APDRA. The Act states: "Upon the granting of an order confirming, modifying or correcting an award, a judgment or decree shall be entered by the court in conformity therewith and be enforced as any other judgment or decree. There shall be no further appeal or review of the judgment or decree." *N.J.S.A.* 2A:23A–18b.

On its face, the Act's limitation of judicial review that eliminates appeals to the Appellate Division from Chancery Division orders confirming or modifying awards directly infringes on the right to appellate review guaranteed by the New Jersey Constitution. Article VI, Section 5, paragraph 2 guarantees the right of appeal from all final decisions of the Law and Chancery Divisions and in such other cases as may be provided by law. This Court has held expressly that the right to appellate review "is a remedial procedure secured against legislative interference by Article VI, Section II, paragraph 2, Section III, paragraph 3, Section V, paragraphs 1, 2 and Article XI, Section IV, paragraph 3." *Hager v. Weber*, 7 *N.J.* 201, 205–06, 81 *A.*2d 155 (1951). Moreover, the statute on its face conflicts with Rule 2:2–3(a)(1), promulgated by this Court pursuant to its constitutional authority, Article VI, Section 2, paragraph 3, that Court Rule expressly authorizing appeals as of right to the Appellate Division from final judgments of the Chancery or Law Divisions. That this Court's exclusive power to promulgate rules governing practice and procedure in all courts supersedes any legislative enactment purporting to govern or limit

the right of appeal is no longer open to debate. *See Winberry v. Salisbury*, 5 *N.J.* 240, 255, 74 *A.*2d 406, *cert. denied*, 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L. Ed.* 638 (1950).

In recognition of the potential vulnerability of APDRA to constitutional challenge, the Court has avoided the issue by construing the Act to permit parties electing to arbitrate pursuant to AP-DRA's provisions either to preserve or waive the constitutionally protected right to appellate review. The Court holds:

> Although limited judicial review is a central component of the APDRA, the APDRA's procedures are entirely voluntary, and thus, parties are free to invoke its procedure *in toto* or subject to agreed upon modifications. *See Tretina Printing [, Inc. v. Fitzpatrick & Assocs., Inc.*, 135 *N.J.* 349, 358, 640 *A.*2d 788 (1994) ] (noting in context of arbitration statute's limited review that parties are free to expand the scope of judicial review by providing for such expansion in their contract). *Had the parties to this action desired to preserve their right to appeal, they could have inserted a provision into the consent judgment reserving that right and delineating the scope and extent of any appeal.* They did not do so.
>
> [*Ante* at 149, 712 *A.*2d at 184 (emphasis added).]

In my view, the Court's pragmatic interpretation of the Act that extends to parties who elect to arbitrate disputes pursuant to the Act's provisions the option either to preserve or forego the constitutional right of appellate review satisfactorily addresses and resolves the constitutional challenge. The Court's interpretation of the Act is faithful to our obligation to construe a statute in a manner that sustains its constitutionality if the statute is reasonably susceptible to such a construction. *See State v. Mortimer*, 135 *N.J.* 517, 534, 641 *A.*2d 257 (1994), *cert. denied*, 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L. Ed.*2d 351 (1994).

I disagree only with the aspect of the Court's disposition that precludes appellate review to plaintiff. As the Court's opinion explains, the parties' agreement to submit disputes between them for resolution pursuant to APDRA was embodied in a consent judgment that simply identified the Act by title as the mechanism by which disputes would be resolved, *ante* at 144, 712 *A.*2d at 181, without any reference whatsoever to the right of appellate review. When the parties entered into that agreement they obviously were unaware that the Act would be construed by the Court to permit

parties proceeding under APDRA to elect to preserve appellate review. Nor does the provision of the consent judgment relating to APDRA meet the level of specificity required to sustain a waiver of constitutional right. " '[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights and ... 'do not presume acquiescence in the loss of fundamental rights.' " *Johnson v. Zerbst,* 304 *U.S.* 458, 464, 58 *S.Ct.* 1019, 1023, 82 *L. Ed.* 1461, 1466 (quoting *Aetna Ins. Co. v. Kennedy,* 301 *U.S.* 389, 393, 57 *S.Ct.* 809, 811–12, 81 *L. Ed.* 1177, 1180 (1937) and *Ohio Bell Tel. Co. v. Public Utils. Comm'n,* 301 *U.S.* 292, 307, 57 *S.Ct.* 724, 731, 81 *L. Ed.* 1093, 1103 (1937)); *State v. Buonadonna,* 122 *N.J.* 22, 35, 583 *A.*2d 747 (1991).

The presumption against waiver of constitutional rights applies in civil cases with the same force as it does in criminal prosecutions. *Fuentes v. Shevin,* 407 *U.S.* 67, 94 n. 31, 92 *S.Ct.* 1983, 2001 n. 31, 32 *L. Ed.*2d 556, 578 n. 31 (1972); *Callen v. Sherman's, Inc.,* 92 *N.J.* 114, 137, 455 *A.*2d 1102 (1983). Constitutional rights may be waived in the commercial context, but such waiver must be clear and explicit. *Ibid.* The United States Supreme Court has held that unless the contractual language, on its face, constitutes such a waiver, no waiver of a constitutional right will be found. *Fuentes, supra,* 407 *U.S.* at 95, 92 *S.Ct.* at 2002, 32 *L. Ed.*2d at 579.

Because the right to appellate review under APDRA had not been established when the parties agreed to be bound by the Act's provisions, and because the waiver of the constitutionally protected right of appellate review was neither clear nor explicit, I would accord plaintiff the right of review by the Appellate Division of the Chancery Division's judgment.

*For affirmance*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and COLEMAN—6.

*Concurring in part; dissenting in part*—Justice STEIN—1.