NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0221-21

JIGNYASA DESAI, D.O., LLC
on assignment of H.Y.L.,[1]

      Plaintiff-Appellant,

v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,[2]

      Defendant-Respondent.

_____

**APPROVED FOR PUBLICATION**

**October 20, 2022**

**APPELLATE DIVISION**

Argued October 11, 2022 – Decided October 20, 2022

Before Judges Whipple, Mawla and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5247-21.

S. Gregory Moscaritolo argued the cause for appellant.

Gregory E. Peterson argued the cause for respondent (Dyer & Peterson, PC, attorneys; Gregory E. Peterson, on the brief).

---

[1] We use initials to protect the patient's privacy, pursuant to Rule 1:38-3(a).

[2] Respondent is interchangeably referred to as New Jersey Manufacturer's Insurance Group and New Jersey Manufacturer's Insurance Company by the parties and the documents contained within the appellate record.

The opinion of the court was delivered by

MAWLA, J.A.D.

Plaintiff Jignyasa Desai, D.O., LLC appeals from a September 20, 2021 Law Division order denying its request to modify an arbitration award involving defendant New Jersey Manufacturer's Insurance Company (NJM), regarding reimbursement for nerve tests performed on plaintiff's patient, H.Y.L. We reverse and remand for entry of an award in plaintiff's favor, consistent with this opinion.

The parties' dispute was arbitrated pursuant to the Alternative Procedure for Dispute Resolution Act (APDRA), N.J.S.A. 2A:23A-1 to -19. A dispute resolution professional (DRP) found for defendant, and plaintiff appealed to a three-DRP panel, which affirmed the original award by a majority ruling. Plaintiff appealed from the panel's decision, and a Law Division judge affirmed in an oral opinion.

On this appeal, plaintiff urges us to exercise our supervisory function and reverse, arguing there is a split in authority in the interpretation of the governing regulation, N.J.A.C. 11:3-29.4(e). The regulation states:

> [T]he insurer's limit of liability for any medical expense benefit . . . not set forth in or not covered by the fee schedules shall be a reasonable amount considering the fee schedule amount for similar services . . . . When a [current procedural terminology (CPT)] code for the service performed has been

2

changed since the fee schedule rule was last amended, the provider shall always bill the actual and correct code found in the most recent version of the . . . [CPT book]. The amount . . . the insurer pays for the service shall be in accordance with this subsection. Where the fee schedule does not contain a reference to similar services or equipment as set forth in the preceding sentence, the insurer's limit of liability for any medical expense benefit for any service or equipment not set forth in the fee schedules shall not exceed the usual, customary and reasonable [(UCR)] fee.

[Ibid.]

The American Medical Association (AMA) promulgates CPT codes for every procedure reimbursable by medical insurance providers.[3] The CPT codes contain no fee schedules, basic units, relative values, or related listings. N.J.A.C. 11:3-29.2. Rather, the Commissioner of the New Jersey Department of Bank and Insurance (DOBI) promulgates the fee schedule. N.J.S.A. 39:6A-4.6. Therefore, the CPT codes and the fee schedules may sometimes be out of synch.

Plaintiff started a course of treatment for H.Y.L., which involved electromyography and nerve conduction velocity (NCV), or nerve conduction study tests. Plaintiff received approval for the testing under CPT code 95913,

---

[3] See CPT Codes, Then and Now, American Medical Association (Aug. 4, 2015), https://www.ama-assn.org/practice-management/cpt/cpt-codes-then-and-now.

which is defined as "[thirteen] or more nerve studies." It then conducted twenty separate NCV tests, which contained three different types of tests coded in the New Jersey fee schedule at the time, including: Eight motor nerve studies coded under 95903; ten sensory tests under 95904; and two "H" tests under 95934. These three codes are no longer recognized by the CPT book and have been consolidated under one current code, 95913.[4] "These changes were made in an effort to address the overlap in the pre-test and post-test work involved in the procedures." Ibid. As a result, CPT 95913 does not differentiate the type of test, rather, the code represents the administration of "[thirteen] or more" tests.

Under the old codes, the prices per unit for the tests were as follows: 95903, $176.35; 95904, $135.64; and 95934, $155.93. Thus, the total billed under the old codes for H.Y.L. would be $3,079.06 ((176.35 x 8) + (135.64 x 10) + (155.93 x 2)). Plaintiff billed $9,585 using CPT 95913. Defendant reimbursed $2,292.55, representing $176.35, the per unit price of the most expensive old test code, CPT 95903, multiplied by thirteen.

Pursuant to N.J.A.C. 11:3-29.4(e), when a code is updated it is cross-referenced to the old code that it replaced. This process is commonly referred

[4] Nerve Conduction Studies (Codes 95907-95913) (March 2013), AMA CPT Assistant, https://www.findacode.com/newsletters/ama-cpt-assistant/index.html.

to as "cross-walking."[5]  Plaintiff argued this method required defendant to "cross-walk" the tests performed back to the old codes, 95903, -04, and -34, which correspond to the current code, 95913, resulting in an additional $786.51 for the additional seven tests performed.

During arbitration, each party provided expert testimony to support its view of the billing dispute.  The DRP found NJM "sufficiently reimbursed" plaintiff.  Moreover, based on the evidence defendant presented, the DRP concluded "the relative value units . . . for the NCS portion of the testing has been modified by the AMA" to lower the value of the testing under the former codes.  A majority of the DRP panel affirmed holding "[t]he CPT code language for CPT 95913 caps reimbursement at [thirteen] studies.  There is no mistake of law or misapplication of the regulation."

The Law Division judge noted "if this is not decided consistently[,] it's going to cause more problems going forward . . . ."  However, he concluded "this is a UCR case.  It is not a crosswalk situation.  And I have no reason to disturb the factual findings below[,] which led to [the DRP] deciding the case the way [they] did."  The judge further found "[t]his is not a coding dispute between the parties[]" because it deals with "reimbursement of NCV testing

---

[5] Crosswalking, MB&CC, https://www.medicalbillingandcoding.org/crosswalking/.

A-0221-21

. . . under an agreed code." He concluded the correct method was not to crosswalk "because the way it's coded now there's no differentiation at all." The DRP's decision "was supported substantially by the factual information given to the DRP below and . . . the reason for the CPT code change was to prevent or someway restrict what was considered at that time as . . . overbilling by medical providers."

## I.

When parties "knowingly agree[] to resolve their disputes under the APDRA," they agree to a limited right of appeal. Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 152 (1998). Once a trial judge reviews an arbitration award under the APDRA, "[t]here shall be no further appeal or review" of decisions "confirming, modifying or correcting an award . . . ." N.J.S.A. 2A:23A-18(b). The exceptions to this rule include when it is "necessary for [the reviewing court] to carry out its 'supervisory function over the [trial] courts.'" Morel v. State Farm Ins. Co., 396 N.J. Super. 472, 476 (App. Div. 2007) (quoting Mt. Hope Dev. Assocs., 154 N.J. at 152). Our supervisory review is warranted "where public policy would require appellate court review." Mt. Hope Dev. Assocs., 154 N.J. at 152; see also Allstate Ins. Co. v. Sabato, 380 N.J. Super. 463, 472 (App. Div. 2005).

A-0221-21

Plaintiff urges us to exercise our supervisory authority to settle a split in authority and points us to a litany of DRP decisions interpreting N.J.A.C. 11:3-29.4(e) through the cross-walking methodology. Conversely, defendant's brief cites several decisions that reach the opposite conclusion. Plaintiff argues our review is also warranted because the judge exceeded his authority under APDRA, and his decision did not satisfy the substantial evidence standard.

II.

Because this dispute regards interpretation of a regulation, our review is de novo. N.J. Mfrs. Ins. Co. v. Specialty Surgical Ctr. of N. Brunswick, 458 N.J. Super. 63, 70 (App. Div. 2019). On a de novo review of a regulation, we give "effect to [its] plain language" and look to agency interpretation of the regulation. In re Young, 471 N.J. Super. 169, 180 (App. Div. 2022) (quoting In re M.M., 463 N.J. Super. 128, 138 (App. Div. 2020)); N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012).

The plain language of N.J.A.C. 11:3-29.4(e) informs an insurer its "limit of liability for any medical expense . . . not set forth in . . . the fee schedules shall be a reasonable amount considering the fee schedule amount for similar services . . . ." But "[w]here the fee schedule does not contain a reference to similar services or equipment . . . the insurer's limit of liability . . . shall not exceed the [UCR]." Ibid.

DOBI explained its interpretation of N.J.A.C. 11:3-29.4(e) through the following hypothetical:

> Q. The CPT code for the service performed has been changed since the fee schedule rule was last amended. For example, CPT codes 64470 through 64476 for facet joint injections have been deleted and replaced by codes 64490 through 64495 in the 2010 edition of the CPT manual. How should facet joint injections be billed and paid?
>
> A. The provider should always bill the actual and correct CPT code that he or she is providing. The amount that the insurer pays for the service is determined by whether the service is similar to one already on the fee schedule as required by N.J.A.C. 11:3-29.4(e). That is the standard for determining whether the fee for a CPT code that is on the fee schedule can be used to set a fee for a code that is not on the fee schedule. The answer depends on the circumstances of each case.
>
> In the case of [f]acet joint injections, although the descriptions of the procedures have been revised and reorganized and the new codes have been placed in a new subsection of the CPT code book . . . [DOBI] notes that the [related value units] for the new codes are very similar to those for the deleted codes.
>
> [Auto Medical Fee Schedule Frequently Asked Questions, NJ Department of Banking and Insurance, https://www.state.nj.us/dobi/pipinfo/medfeeqa.html (last updated February 2011).]

The plain language of N.J.A.C. 11:3-29.4(e), and DOBI's interpretation of it, makes clear plaintiff's interpretation is the correct one. Pursuant to the regulation, the new CPT code, 95913, should be billed to the deleted CPT

A-0221-21

code(s), 95903, 95904, and 95934. The parties do not dispute the new code substitutes for the deleted ones. Thus, the related value units of the new code and the deleted ones are similar. Defendant's contention the UCR analysis should control ignores N.J.A.C. 11:3-29.4(e)'s instruction to consult the fee schedule and bill based on "similar services" if a code no longer exists in the CPT book. For these reasons, we reverse and remand for entry of an award in plaintiff's favor.

III.

Finally, plaintiff argues we should remand for a determination of counsel fees. Attorney's fees are allowable "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." R. 4:42-9(a)(6). The court considers:

> (1) the insurer's good faith in refusing to pay the demands; (2) excessiveness of plaintiff's demands; (3) bona fides of one or both of the parties; (4) the insurer's justification in litigating the issue; (5) the insured's conduct in contributing substantially to the necessity for the litigation on the policies; (6) the general conduct of the parties; and (7) the totality of the circumstances.
>
> [Enright v. Lubow, 215 N.J. Super. 306, 313 (App. Div. 1987).]

An award of counsel fees is discretionary. Ibid. (internal citations omitted) (citing Felicetta v. Com. Ins. Co., 117 N.J. Super. 524, 529 (App. Div. 1971)).

9

"Such fees may be allowed on appeal."  Maros v. Transamerica Ins. Co., 76 N.J. 572, 579 (1978) (citing Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234, 244-45 (App. Div. 1975)).

The issue presented was novel and unsettled.  For these reasons, and because we are unconvinced the Enright factors would favor an award of fees to plaintiff, we decline to remand for consideration of counsel fees.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-0221-21